J-A20005-20 & J-A20006-20

2021 PA Super 46

| | | |
|---|---|---|
| LACEY POVRZENICH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JENNIFER K. RIPEPI, M.D.; JENNIFER | : | |
| K. RIPEPI PEDIATRICS, LLC; FRANK | : | |
| G. DIETTINGER, M.D.; IMAGING | : | No. 1764 WDA 2019 |
| ASSOCIATES OF GREATER | : | |
| PITTSBURGH, LLC; AND | : | |
| MONONGAHELA VALLEY HOSPITAL | : | |
| | : | |
| | : | |
| LACEY POVRZENICH, A MINOR, BY | : | |
| AND THROUGH HER PARENTS AND | : | |
| NATURAL GUARDIANS, JANNA | : | |
| PALLOTTA AND EDWARD | : | |
| POVRZENICH | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAWN R. MCCRACKEN, M.D.; DAWN | : | |
| MCCRACKEN, M.D., P.C.; | : | |
| MONONGAHELA VALLEY HOSPITAL; | : | |
| AND MON VALLEY COMMUNITY | : | |
| HEALTH SERVICES, INC. | : | |
| | : | |
| | : | |
| APPEAL OF: LACEY POVRZENICH, | : | |
| JANNA PALOTTA AND EDWARD | | |
| POVRZENICH | | |

Appeal from the Judgment Entered December 6, 2019
In the Court of Common Pleas of Washington County Civil Division at
No(s):  2015-4727

| | | |
|---|---|---|
| LACEY POVRZENICH, A MINOR BY | : | IN THE SUPERIOR COURT OF |
| AND THROUGH HER PARENTS AND | : | PENNSYLVANIA |
| NATURAL GUARDIANS, JANNA | : | |

PALLOTTA AND EDWARD          :
POVRZENICH                   :
                             :
                             :
        Appellants           :
                             :
                             :   No. 1765 WDA 2019
        v.                   :
                             :
                             :
DAWN R. MCCRACKEN, M.D.,      :
DAWN MCCRACKEN, M.D., PC.;    :
MONONGAHELA VALLEY            :
HOSPITAL; AND MON VALLEY      :
COMMUNITY HEALTH SERVICES,    :
INC.                         :

Appeal from the Judgment Entered December 6, 2019
In the Court of Common Pleas of Washington County Civil Division at
No(s):  2013-5772


BEFORE:  BOWES, J., OLSON, J., and MUSMANNO, J.

OPINION BY BOWES, J.:                      **FILED: MARCH 19, 2021**

Lacey Povrzenich ("Lacey" or "Plaintiff"), appeals at two numbers from

the judgment[1] entered in her favor and against Mon Valley Community Health

Services ("MVCHS") in this medical malpractice action.  Plaintiff, the verdict

---

[1] Plaintiff filed two notices of appeal purporting to appeal from two separate orders entered on October 25, 2019: the order denying her motion for post-trial relief, and the order granting in part and denying in part her motion for delay damages.  Although an appeal properly lies from the judgment following the disposition of such motions, where judgment is subsequently entered, we will treat the appeal as one from the judgment.  ***See Johnston the Florist, Inc. v. Tedco Constr. Corp.***, 657 A.2d 511, 514 (Pa.Super. 1995) (holding appeal lies from judgment, not from the denial of post-trial motions); ***LaRue v. McGuire***, 885 A.2d 549, 551 n.1 (Pa.Super. 2005) (holding order granting or denying delay damages is generally interlocutory and not appealable unless reduced to judgment).  Judgment was entered on December 6, 2019, and we have amended the caption accordingly.

- 2 -

winner below, contends that she is entitled to a new trial limited to damages because the trial court erroneously precluded the testimony of her expert life care planner, Dana Bissontz, as to Plaintiff's future medical expenses. Additionally, Plaintiff alleges that the trial court erred in the computation of delay damages by excluding certain time periods from consideration. We *sua sponte* consolidated the two appeals pursuant to Pa.R.A.P. 513, and, after careful review, we affirm the judgment in part, vacate in part, and remand.

The facts giving rise to the instant medical malpractice action are as follows. Lacey was born on January 31, 1996, with a cleft palate for which she underwent several surgeries. From 1997 to 2007, Lacey was treated for five urinary tract infections ("UTI") by her pediatrician, Dr. McCracken.

In 2008, Lacey changed primary care providers and came under the care of pediatrician Jennifer Ripepi. M.D. In February, while under Dr. Ripepi's care, Lacey was treated at Monongahela Valley Hospital for dehydration. A urine screen at that time revealed a UTI, as well as high creatinine levels. A computed tomography ("CT") scan of her pelvis was interpreted as normal by Dr. Frank Diettinger. The results were forwarded to Dr. Ripepi. A course of antibiotics were prescribed for the infection, and once they were completed, Dr. Ripepi ordered another culture, which was reported as normal. In May 2008, Lacey returned to Dr. Ripepi with complaints of left-sided abdominal pain occurring daily and lasting several hours. Dr. Ripepi reviewed the urine test results and again prescribed antibiotics.

Shortly thereafter, the family relocated and Lacey was seen at MVCHS. On March 3, 2009 and May 4, 2010, Lacey was noted to have elevated blood pressure. Two weeks later, on May 18, 2010, Lacey went to the Mon Valley Hospital emergency room, and was lifeflighted to Children's Hospital in Pittsburgh. There she was diagnosed with end-stage renal disease secondary to severe reflux nephropathy. Lacey was advised that she would need a kidney transplant, and placed on dialysis immediately.

In 2015, Lacey underwent a kidney transplant with a kidney donated by her mother. Since the transplant, she has shown signs of rejection and required dialysis, and it is likely that Lacey will require a second kidney transplant in the future.

On September 20, 2013, Janna Palotta and Edward Povrzenich, parents of then seventeen-year-old Lacey, filed a medical negligence action on her behalf at G.D. 2013-5772 against Dr. McCracken, Dawn McCracken, M.D., PC, Monongahela Valley Hospital, and MVCHS.[2] They asserted that these Defendants were negligent in failing to conduct further testing, and/or failing to refer Lacey to a specialist, resulting in additional damages due to delay in diagnosis of her kidney reflux.

Discovery was ongoing in the case filed at G.D. 2013-5772, when Lacey, having reached the age of majority, filed a second medical malpractice action

---

[2] Plaintiff originally named Southwestern Pennsylvania Human Services, Inc. as a defendant in the action. On April 14, 2014, the parties stipulated to the substitution of MVCHS for that entity.

at G.D. 2015-4727 against Jennifer K. Ripepi, M.D., Jennifer K. Ripepi Pediatrics, LLC., Frank G. Diettinger, M.D., and others. She alleged therein that Dr. Ripepi was negligent in failing to follow up on the UTIs and high creatinine levels, failing to recognize the abnormal labs, treating Lacey with repeated course of antibiotics that aggravated the renal failure, and failing to refer Lacey to an appropriate specialist. Dr. Diettinger was allegedly negligent for failing to note and report abnormalities shown on CT scans. Lacey maintained that if her condition had been detected earlier and properly treated, a less invasive surgical procedure could have been performed.

On September 23, 2015, the trial court granted Plaintiff's motion to consolidate the two actions "for all purposes" at the second docket number G.D. 2015-4727. In addition, the caption was amended to reflect both captions and the consolidated number.

A two-week jury trial of the consolidated action commenced on October 16, 2018. On October 26, 2018, the jury returned a verdict against Dr. McCracken and MVCHS, finding that they were negligent, and that their negligence was a factual cause of harm to Lacey.[3] Dr. Ripepi, Dr. Diettinger, and Mon Valley Hospital were found not negligent. The jury attributed eighty-five percent of the negligence to Dr. McCracken, and fifteen percent to MVCHS,

_____

[3] The record reveals that Dr. McCracken settled with Plaintiff prior to trial.

and awarded Plaintiff $245,573.28 for past medicals, $1 million for past economic loss, and $3 million for future noneconomic losses.

MVCHS filed a timely motion for post-trial relief, which was denied. Plaintiff also filed a motion for post-trial relief seeking a new trial limited to damages, alleging that the trial court improperly excluded her life care planner from testifying as to future medical expenses, which the trial court denied. She also filed a motion to mold the verdict to include delay damages, which was granted in part and denied in part.

On November 22, 2019, Plaintiff filed two notices of appeal: one designated as an appeal from the order granting in part her motion to mold the verdict and add delay damages, and the other purporting to appeal from the denial of her motion for post-trial relief.[4] Both notices of appeal listed the two docket numbers, and were filed at the consolidated number, No. 2015-4727, but were also noted on the docket for No. 2013-5772.

This Court assigned appeal number 1764 WDA 2019 to the first notice of appeal from the order molding the verdict and awarding delay damages, and 1765 WDA 2019 to the second appeal challenging the evidentiary ruling excluding the testimony of the life care planner. We then issued a rule in each appeal directing Plaintiff to show cause why the appeals should not be quashed

---

[4] Judgment was not entered on the verdict against MVCHS until December 6, 2019. Where, as here, a party appeals prior to entry of judgment, but judgment is subsequently entered, we treat that which ought to have been done as done.

- 6 -

for failure to comply with the Official Note to Pa.R.A.P. 341(a) and *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018). Specifically, in *Walker*, the Pennsylvania Supreme Court mandated "that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed," and the failure to do so will result in quashal of the appeal. Order, 12/18/19.

Plaintiff responded to the rule by explaining that there was only one lower court docket number, G.D. 2015-4727, because the actions filed at G.D. 2013-5772 and G.D. 2015-4727, had been consolidated at the latter number. *See* Response to Rule to Show Cause, 12/26/19, at 1. Plaintiff appended to her response a copy of the docketing statement that had been attached to each notice of appeal, and pointed out that the number at which the case was heard, G.D. 2015-4727, was noted at the top of the docket.

By order of December 30, 2019, this Court discharged the rule to show cause, but noted that this ruling was not binding upon the panel. Counsel was advised that the issue could be revisited by the merits panel, and that counsel should be prepared to address the panel's concerns either in their briefs or at oral argument. Order, 12/30/19, at 1. MVCHS raises the issue in its brief, and urges this Court to quash the appeals pursuant to *Walker*.

Plaintiff and the trial court have complied with Pa.R.A.P. 1925, and the matter is ripe for our review. Plaintiff presents two issues:

> A. Did the trial court err when it granted the Defendant[s'] Motion to Exclude Plaintiff's Life Care Planner Dana Bissontz from

testifying, on the basis that she lacked the qualifications to render opinions on the future medical care and costs of the Plaintiff Lacey Povrzenich, which deprived the jury of measuring all of the economic damages of the Plaintiff.

B. Did the trial court err in its calculation of delay damages, when it excluded three periods of time from the calculation of delay damages due to extensions of discovery dates, which did not delay the trial, depriving the Plaintiff Lacey Povrzenich of her right to additional statutory damages.

Appellant's brief at 7.

Before we address the merits of the appeal, we must first determine if Plaintiff has complied with **Walker**. MVCHS maintains that Plaintiff initiated two actions against two different sets of defendants at two docket numbers. Thus, MVCHS contends that this is a case where a single order, *i.e.*, the judgment, resolved issues on more than one docket, and that filing a single notice of appeal listing both docket numbers was insufficient. **See e.g.**, **C.T.E. v. D.S.E.**, 216 A.3d 296, 299 (Pa.Super. 2019) (quashing the appeal, pursuant to **Walker,** where the appellant filed a single, timely notice of appeal listing both docket numbers); **Commonwealth v. Nichols**, 208 A.3d 1087 (Pa.Super. 2019) (quashing the appeal where the appellant filed one notice of appeal with issues that related to three different lower court docket numbers).

However, instead of filing separate notices of appeal from the judgment at each lower court docket number, Plaintiff filed two notices of appeal from two non-final trial court orders.[5]

Plaintiff reiterates that, by order of court, two different docket numbers were consolidated under one trial court docket number, G.D. 2015-4727, and explains that she filed the two appeals at the consolidated number because "[w]here two actions are consolidated, only one action retains its identity and the others are absorbed by it." Appellant's Reply Brief at 2, 4 (citing *Kincy v. Petro*, 2 A.3d 490, 496 (Pa. 2010)). Furthermore, Plaintiff maintained that discovery, trial, and the verdict were conducted at the consolidated case number. *Id*. at 5. She contends that although she filed two notices of appeal, one notice of appeal filed at the consolidated docket was sufficient to comply with *Walker*.

Since the filing of the parties' briefs herein, there have been several decisions clarifying the application of *Walker*. In *Commonwealth v. Jerome Johnson*, 236 A.3d 1141 (Pa.Super. 2020) (*en banc*) (overruling in part *Commonwealth v. Creese*, 216 A.3d 1142 (Pa.Super. 2019)), this Court held that including multiple docket numbers on separately filed notices

---

[5] MVCHS acknowledges, however, that this latter defect was cured when judgment was subsequently entered on December 6, 2019. *See* MVCHS's brief at 12 n.7 (citing *Johnston the Florist, Inc*. *v. Tedco Constr. Corp.*, 657 A.2d 511, 514 (Pa.Super. 1995) (permitting appeal purporting to be from denial of post-trial motions when judgment was subsequently entered).

of appeal was not grounds for quashal under ***Walker***. ***See also***

***Commonwealth v. Rebecca Johnson***, 236 A.3d 63 (Pa.Super. 2020) (*en banc*) (crediting the appellant's representation that, although the notices of appeal contained all three docket numbers, she filed a separate notice of appeal at each docket number because the time stamp on each notice was in a different location and the time of filing was unique on two of the three notices).

We find no merit in Plaintiff's contention that consolidation below obviated the need for two notices of appeal.[6] ***Walker*** required that separate notices of appeal be filed for each docket. ***See*** Pa.R.A.P. 341, Official Note ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed.").

Plaintiff filed two separate notices of appeal at the consolidated number. The question is whether it matters for purposes of ***Walker*** that the two notices of appeal were filed at same docket. Our review of the certified record reveals that, following consolidation, all original documents were filed at the

---

[6] This was not a complete consolidation because the actions did not "involve the same parties, subject matter, issues, and defenses." ***Kincy v. Petro***, 2 A.3d 490, 494 (Pa. 2010). ***See also Malanchuk v. Sivchuk***, 148 A.3d 860, 863-864 (Pa.Super. 2016) (consolidated actions that did not involve identical parties were not completely consolidated). Thus, Plaintiff's reliance upon ***Kincy*** for the proposition that the action filed at No. 2013-3772 ceased to exist when it was consolidated at No. 2015-4727, is mistaken.

- 10 -

consolidated number, including motions *in limine*, the verdict, post-trial motions, *praecipes* for judgment, and notices of appeal. For instance, judgment was entered herein at the consolidated docket number, and noted on the 5772 docket. It appears that following consolidation, the 5772 docket was dormant for **filing** purposes. However, that docket reflects the filings at the consolidated docket number, including the filing of two separate notices of appeal each bearing the two docket numbers.

Herein, Plaintiff filed two separate notices of appeal, albeit for the wrong reason. Furthermore, the fact that each notice contained both docket numbers is not grounds for quashal under **Walker**. **See Jerome Johnson**, **supra**. Nor do we find it problematic that both notices of appeal were filed at the consolidated docket number. This was the filing procedure utilized by the Prothonotary throughout the litigation. Moreover, the filing of the two separate notices of appeal bearing both docket numbers adequately conveyed to this Court that two dockets were implicated, and that separate appellate docket numbers were required. Consequently, this Court retained the ability to exercise its discretion to consolidate the appeals pursuant to Pa.R.A.P. 513, which was one of the purposes cited by the **Walker** Court for requiring that separate appeals be filed for each implicated docket. **See Walker**, **supra** at 976 (holding that Rule 341(a) must be read consistently with the Rules 512 and 513 governing joint appeals, and that the filing of a single notice of appeal from an order arising on more than one docket effectively consolidated

- 11 -

appeals without either the approval of the Superior Court or the agreement of the appellees as required in Rule 513). For these reasons, we find the filing of two separate notices of appeal sufficient under **Walker**, and decline to quash these appeals.

We turn now to the merits of this consolidated appeal. Plaintiff contends that the trial court erred in denying her motion for a new trial limited to damages because the testimony of Life Care Planner Nurse Dana Bissontz regarding Plaintiff's future medical expenses was improperly excluded.

Our standard of review from a trial court's grant or denial of a new trial is whether the trial court abused its discretion. **Mader v. Duquesne Light Co.**, 241 A.3d 600, 607 (Pa. 2020). We review the underlying matter that formed the basis for the trial court's decision to determine "whether a mistake occurred and whether that mistake was sufficient to order a new trial." **Id**. If an error occurred, we must determine whether the trial court abused its discretion in ruling on the request for a new trial, *i.e.*, "whether the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." **Id**. (citations omitted).

The specific error identified by Plaintiff involves the trial court's exclusion of expert testimony. The "[a]dmissibility of expert testimony is left to the sound discretion of the trial court, and as such, this Court will not reverse the

trial court's decision absent an abuse of discretion." ***Snizavich v. Rohm & Haas Co.***, 83 A.3d 191, 194 (Pa.Super. 2013).

The following legal principles inform our review. Pa.R.E. 702 governs testimony by expert witnesses. It provides in pertinent part that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson" and if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Pa.R.E. 702(a)(b). Under Pennsylvania law, the standard for qualification of an expert witness is a liberal one. ***See George v. Ellis***, 820 A.2d 815, 817 Pa.Super. 2003) (citation omitted). "In order to qualify as an expert witness in a given field, a witness normally need only possess more expertise than is within the ordinary range of training, knowledge, intelligence, or experience." ***Miller v. Brass Rail Tavern, Inc.***, 664 A.2d 525, 528 (Pa.1995)). If an expert witness has any reasonable pretension to specialized knowledge on the subject under investigation, she may testify and the weight to be given to such testimony is for the trier of fact to determine. ***See James v. Albert Einstein Medical Center***, 170 A.3d 1156, 1162 (Pa.Super. 2017).

Plaintiff contends that the trial court abused its discretion excluding Life Care Planner Dana Bissontz. The trial court offered two bases for the exclusion of her expert testimony. First, the court concluded that Nurse Bissontz had

"no specialized knowledge, skill, experience, training or education relating to kidney transplant patients' needs." Trial Court Opinion, 3/9/20, at 9-10. Since Nurse Bissontz never worked with a kidney transplant patient, she was not qualified as an expert on the lifetime needs of a kidney transplant patient. *Id*. at 10. In addition, the trial court ruled that no foundation was laid as to the testing, procedures, and medications that are required for a patient who has undergone a kidney transplant and who likely will require a second kidney transplant. *Id*.

Plaintiff contends that Dana Bissontz had the requisite knowledge, experience, training and education to testify about a life care plan projecting future costs for a person like Lacey, whom physicians opined would likely need another kidney transplant in the future. According to Plaintiff, the trial court's concerns goes to the weight of Nurse Bissontz's testimony rather than its admissibility. As a consequence of the trial court's error, Plaintiff argues that damages for future medical damages were not submitted to the jury, which was highly prejudicial.

With regard to future medical expenses, it is plaintiff's burden to prove not only that such expenses will be incurred, but the estimated cost of such services. We have recognized that such information is not within the general knowledge of laypersons, and that expert testimony is required to avoid the prospect of a verdict based on speculation. *See Cohen v. Albert Einstein Medical Center*, 592 A.2d 720, 729 (Pa.Super. 1991). Generally, physicians

provide the foundational testimony for the future medical care and treatment that will be necessary. Life care planners research the price of the various procedures, treatments, and medications associated with the future medical care and render expert opinions on the cost to an individual. A life care planner is a recognized expert in Pennsylvania who "reviews medical records and bills to formulate an expert opinion projecting the future medical costs of an individual over her lifetime." *Deeds v. Univ. of Pennsylvania Med. Ctr.*, 110 A.3d 1009, 1012 (Pa.Super. 2015).

Dr. Tej Mattoo, Plaintiff's expert in pediatric kidney disease and transplants opined that Plaintiff would likely require another kidney transplant, perhaps dialysis, and the medications and other services that accompany a transplant. He treated patients who have had kidney transplants. N.T. Jury Trial Vol. II, 10/17/18, at 90. Dr. Mattoo described a kidney transplant as a "life-changing event," and offered the following insights. *Id*. at 92. Dr. Mattoo explained that transplant patients remain under "intense medical care throughout their li[ves]. *Id*. When things are going well, the time between clinic visits can be as long as three months. *Id*. Otherwise, follow up is much more often. *Id*. Transplant recipients must get lab work at each follow-up visit, and often in-between visits. *Id*. Such patients are usually taking five to ten medications that are adjusted at regular visits. They may also need to abide by strict dietary restrictions. Many times, according to Dr. Mattoo, the transplanted kidney will start to fail, and the patient repeats the cycle that led

to the first transplant: "chronic kidney disease, then dialysis, and then another transplant." *Id*. at 93. Counseling and support services are provided while patients are undergoing dialysis and after a transplant. Dr. Mattoo also examined the bills and charges following Lacey's first transplant, and he testified that those bills totaling $242,573.28 were reasonable, necessary, and related to the care she required. *Id*. at 95. *See* Plaintiff's Exhibit 1.

Dana Bissontz, a certified life care planner with twenty years' experience as a registered nurse, determined the costs associated with the future medical care that Dr. Mattoo outlined. Nurse Bissontz interviewed Lacey, her parents, reviewed the medical records, referenced numerous sources that provided information about renal disease and coding for kidney transplantation, and prepared an expert report. She calculated the base cost for anticipated services, then the annual cost, and multiplied the latter figure by Lacey's life expectancy. The expenses included testing, pre-transplant management, future medical care, and medications. Nurse Bissontz prepared a life care plan containing her opinions rendered to a reasonable degree of certainty as a life care planner and registered nurse with twenty years of experience.

At trial, Plaintiff called Nurse Bissontz to offer testimony consistent with her expert report as a certified life care planner. *Voir dire* on her qualifications was conducted, wherein Plaintiff established her education as a nurse, and her work experience in diverse settings, including nursing homes, operating

rooms, and conducting utilization review. In addition, Nurse Bissontz obtained certification as a life care planner from Capital University's law school.

Defense counsel cross-examined Nurse Bissontz regarding her qualifications, and thereafter objected to her testimony. Defendants argued that Nurse Bissontz had no particular expertise with respect to individuals who have undergone kidney transplants, and was not qualified to render medical conclusions. Plaintiff countered that Nurse Bissontz's credentials, education, and experience, in both medicine and utilization review, qualified her to testify in this case, and that any lack of specific experience with kidney transplant patients went to the weight of her testimony, not its admissibility. The trial court excluded Nurse Bissontz's testimony, finding that she was not qualified because she lacked experience with kidney transplants.[7]

We find that Dana Bissontz had sufficient specialized knowledge and experience to offer her expert opinions regarding the future medical expenses associated with post-kidney transplant care and a second kidney transplant anticipated by Dr. Mattoo. The fact that she had little experience with kidney transplant patients did not disqualify her from using her skills and experience

---

[7] Prior to trial, MVCHS had filed a motion *in limine* seeking to exclude Dana Bissontz from testifying where she was relying upon Dr. Mattoo's opinions in formulating her opinions. MVCHS maintained that Dr. Mattoo's opinions were speculative. By order dated October 9, 2018, the motion was denied.

to analyze the costs associated with such a procedure and its aftermath.[8]  The matter under investigation was not a kidney transplant *per se*, but the costs associated with such a procedure.  The mere fact that Nurse Bissontz had not personally cared for a kidney transplant patient would not hamper her ability to research and accurately tabulate the expenses associated with such a procedure.  Any lack of experience with kidney transplants in particular went to the weight of her testimony, not to its admissibility.  **See e.g. Wright v. Residence Inn by Marriott, Inc.**, 207 A.3d 970, 977 (Pa.Super. 2019) (finding abuse of discretion where trial court precluded an internist from offering expert opinions regarding an orthopedic injury in a slip and fall case, as strength of the internist's credentials went to the weight of his testimony, not its admissibility).

Nor can we affirm the trial court's ruling based on a lack of foundation. Nurse Bissontz was excluded after *voir dire* on qualifications only.  She never had the opportunity to explain the factual foundation for her expert opinions. Consequently, we conclude that the trial court abused its discretion in precluding Nurse Bissontz from testifying at trial.

---

[8] Nurse Bissontz was not offering standard of care testimony, which typically involves a heightened requirement for expert medical testimony involving a specialized area of practice, if the defendant is a specialist.  **See e.g. Wexler v. Hecht**, 847 A.2d 95, 99-100 (Pa.Super. 2004) *aff'd*, 928 A.2d 973 (Pa. 2007).

Having found that the trial court abused its discretion in excluding Nurse Bissontz's testimony, we must determine whether the evidentiary ruling was prejudicial, *i.e.*, whether it affected the verdict. ***See Wright v. Residence Inn by Marriott, Inc***., 207 A.3d 970, 978 (Pa.Super. 2019). The trial court acknowledged that if its ruling was deemed to be an abuse of discretion, it was prejudicial. ***See*** Trial Court Opinion, 3/6/20, at 11 (noting that prejudice "was clearly established as the court did not instruct the jury as to future medical cost and no line item for future medical costs was on the verdict slip."). In short, Plaintiff was precluded from offering evidence of, and recovering, substantial future medical expenses. Hence, we find that some form of a new trial is required. The question remaining is the scope of the new proceeding.

Plaintiff maintains that a new trial limited to damages and involving only the defendants found liable would suffice.[9] We agree that liability was fully determined, that it was not intertwined with damages, and that a new trial limited to damages is appropriate herein. However, our Supreme Court recently addressed the scope of a retrial on damages only in ***Mader***, ***supra***, and we find it instructive. The Court "reject[ed] the notion that a *per se* rule exists requiring a remand for all damages whenever a new trial is awarded on

---

[9] Plaintiff sought a new trial limited to damages or "such other relief as the Court deems appropriate." Plaintiff's Motion for Post-Trial Relief in the Nature of a New Trial Limited to the Plaintiff's Damages, 11/5/18, at 11.

certain damages." *Id*. at 614. The High Court added that when a trial court is facing the decision to relitigate all damages in a new trial, or just certain discrete damages, "it should discern whether the properly awarded damages in the first trial were 'fairly determined,' and, if so, whether they are sufficiently independent from, and are not 'intertwined' with the erroneously determined damages." *Id*.

There is no allegation that damages for past medical expenses, past non-economic loss, and future non-economic loss, defined as "pain and suffering, embarrassment and humiliation, loss of enjoyment of life," were improperly determined. *See* Verdict Slip, 10/26/18. Since no evidence of damages for future medical expenses was presented, the jury was not instructed on such damages and the verdict slip did not contain lines permitting the jury to assess future damages for medical expenses. We find that damages for future medical expenses are sufficiently independent and discrete from the other damages as to permit a new trial limited to those damages only. Hence, we remand for a new trial limited to damages for future medical expenses.[10]

_____

[10] Defendants argue that since Plaintiff did not offer her economist James Kenkel, Ph.D., and there was no order precluding him from testifying, he cannot testify at the retrial on damages. We disagree. Dr. Kenkel's expert opinion and calculations were based on Nurse. Bissontz's life care plan. Once Ms. Bissontz was precluded from testifying, there was no foundation for Dr. Kenkel's opinions, which was correctly pointed out by counsel for defendant. *See* N.T. Jury Trial Vol. III, 10/18/18, at 164 ("Your Honor, the testimony of

Plaintiff's final issue involves the calculation of delay damages. Since we are remanding for a new trial on damages for future medical expenses, and the jury's award will not be known until the new trial is completed, it might appear at first blush that any claim involving delay damages would be moot. However, at issue is whether the trial court erred in excluding from the calculation of delay damages three periods when Plaintiff sought and obtained discovery extensions, and that issue is likely to reoccur following the new trial and the recalculation of delay damages. Hence, we will address it.

Delay damages are governed by Rule 238, which provides in pertinent part:

> Rule 238. Damages for Delay in Actions for Bodily Injury, Death or Property Damage
>
> (a)
>
> (1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial or in the award of arbitrators appointed under section 7361 of the Judicial Code, 42 Pa.C.S. § 7361, and shall become part of the verdict, decision or award.
>
> (2) **Damages for delay shall be awarded for the period of time from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision.**

---

[Dr. Kenkel] is obviated by the fact that you excluded this witness [Dana Bissontz)]"). Following Ms. Bissontz's testimony at the limited new trial, there is no impediment to Dr. Kenkel offering expert economic testimony evaluating the life care plan.

- 21 -

(3) Damages for delay shall be calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus one percent, not compounded.

(b)
(1) **The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any,**

      (i)      after the defendant made a written offer which complied with the requirements of subdivision (b)(2), provided that the plaintiff obtained a recovery which did not exceed the amount described in subdivision (b)(3), or

      **(ii)      during which the plaintiff caused delay of the trial.**

Pa.R.C.P. 238 (emphases added).

Plaintiff filed a timely motion for delay damages herein. There was no dispute that Plaintiff was entitled to delay damages; the controversy centered on the amount of such damages.[11] MVCHS filed a response in which it alleged that the three periods for which Plaintiff sought and received discovery extensions should be excluded from the calculation. In addition, MVCHS pointed to three shorter periods of delay when Plaintiff failed to timely file pretrial statements and expert reports. Finally, MVCHS argued that the entire

---

[11] Although MVCHS submitted a written settlement offer prior to trial, Plaintiff's recovery exceeded that offer by more than 125%.

two-year period from 2015-2017 should be excluded for purposes of the delay damages calculation because consolidation delayed trial for that period.

The trial court found that the three periods when Plaintiff requested and received extensions of discovery were delays attributable to Plaintiff. Trial Court Opinion, 3/6/20, at 12. In each instance, the trial court found that the extensions were sought to enable Plaintiff to collect additional medical records to submit to her experts for review, and not due to any recalcitrant conduct on the part of Defendants. Accordingly, the trial court excluded the time from August 27, 2014 through December 31, 2016, which was the entire extended discovery period. In rejecting Plaintiff's argument that these discovery extensions did not delay trial, the court explained that, "a trial date is not set until discovery is closed and Pre-Trial Statements are filed." *Id*. at 13.

We review a trial court's ruling under Rule 238 for an abuse of discretion. ***Tindall v. Friedman***, 970 A.2d 1159, 1177 (Pa.Super 2009). We will not reverse a decision of the trial court regarding the imposition of such damages absent such an abuse. ***Id***.

Plaintiff contends that generally, the requests to extend discovery were sought to permit Plaintiff to locate and serve a defendant, collect medical records, consult with experts, take depositions, and other similar tasks that normally cause delay during the discovery period. Plaintiff directs our attention to ***Kuchak v. Lancaster***, 547 A.2d 372, 375 (Pa.Super. 1988), a medical malpractice action wherein this Court found that, in calculating delay

damages, the plaintiff was not responsible for a forty-eight-month delay between the filing of the complaint and the verdict in favor of the plaintiff, despite all requests for continuances being made by the plaintiff. In ***Kuchak***, plaintiff sought discovery extensions in order to depose each medical provider and seek expert review of providers' actions. In addition, there were delays due to the unavailability of medical providers and attorney scheduling conflicts. According to Plaintiff, this Court characterized such delays in ***Kuchak*** as "normal," "always present," and "naturally affect[ing] the length of discovery." ***Id***. at 375. Further, this Court refused "to categorically impute natural delays in discovery to plaintiffs unless it is demonstrated that the plaintiff failed to take reasonable and normal steps to prepare his case and proceed to trial." ***Id***. Plaintiff contends that, as in ***Kuchak***, she prepared her case "expeditiously" and the continuances were not due to her failure to proceed diligently, but attributable to normal events in the course of discovery.

MVCHS maintains that the trial court properly determined that delay damages commenced on April 1, 2015, but then concluded that she was not entitled to delay damages at that time since she caused "significant delay." MVCHS's brief at 23. Additionally, MVCHS points out that the trial court did not exclude from the calculation of delay damages an additional fifty-four days of delay caused by Plaintiff in 2017. ***Id***. at 24.

At issue is whether the delay occasioned by discovery extensions at Plaintiff's request delayed the trial of this case. In **Tindall**, we held that the trial court misinterpreted Rule 238 when it imposed delay damages for the period when **trial** was postponed due to a continuance requested by plaintiff's counsel and the defendants were ready to proceed. We held therein that the delay in trial was not the result of any action by the defendants or the court system, and that the plaintiff was not entitled to delay damages for that period. **See also Wirth v. Miller**, 580 A.2d 1154, 1156 (Pa.Super. 1990) (reversing the award of delay damages for the period from March 22, 1989 when trial was originally scheduled to commence, and May 10, 1989, when trial was rescheduled, because the delay of trial was at plaintiff's request).

The situation here does not involve the continuance of the trial *per se*. Rather, it involves extensions of the time for discovery that are commonplace and expected during the preparation of complex litigation. As the explanatory note to Rule 238 states, "not every procedural delay is relevant to the issue of delay damages, but only such occurrences as actually cause delay of the trial." Pa.R.C.P. 238 Explanatory Comment.

In **Kuchak**, we refused "to categorically impute natural delays in discovery to plaintiffs unless it is demonstrated that the plaintiff failed to take reasonable and normal steps to prepare his case and proceed to trial." **Kuchak**, **supra** at 293. In that case, the trial court "specifically found that [plaintiff] had expeditiously prepared his case," continuances were necessary

- 25 -

as discovery was incomplete, and that the non-completion of discovery did not result from plaintiff's "failure to proceed diligently." *Id*.

In the case *sub judice*, the trial court made no finding that Plaintiff required discovery extensions because she had not proceeded diligently. Rather, the trial court's holding suggests that the discovery continuances count against Plaintiff simply because she requested them. In accord with **Kuchak**, **supra**, we decline to endorse the trial court's position that every extension of discovery sought by a plaintiff in a complicated medical malpractice case *ipso facto* constitutes a delay of trial merely because a trial date is not set until discovery is closed. There are valid reasons why discovery may need to be extended, especially in complex cases with multiple defendants and attorneys.

We note that MVCHS was served in this case on April 1, 2014. It filed its answer and new matter on July 17, 2014. Two weeks later, on August 1, 2014, a pre-trial deficiency order issued because Plaintiff failed to file a pretrial statement. To avoid the imposition of sanctions, Plaintiff sought the first extension of discovery on August 27, 2014. In our view, Plaintiff had virtually no opportunity to engage in discovery with MVCHS. Furthermore, MVCHS did not allege, nor did the trial court find, that during this short interval Plaintiff failed to take reasonable and normal steps to prepare her case or was not diligent in moving the case to trial.

For these reasons, we vacate the award of delay damages. In re-calculating delay damages following the limited new trial, we direct the trial court to determine whether, during the periods Plaintiff sought and obtained discovery extensions, Plaintiff displayed a lack of diligence that delayed the trial of this case, and assess delay damages accordingly.

Judgment affirmed in part and vacated in part. Orders vacated denying post-trial motion for limited new trial and assessing delay damages. Case remanded for a limited new trial as to future medical expenses and reassessment of delay damages. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/19/2021